**Dale DEPAS Plaintiff–Appellant,**

v.

**STOCKER & YALE, INC.**
**Defendant–Appellee.**

No. 02–2369.

United States Court of Appeals, Sixth Circuit.

April 9, 2004.

Donald J. Gasiorek, Patrick J. Burkett, Sommers, Schwartz, Silver & Schwartz, Southfield, MI, for Plaintiff–Appellant.

Joseph A. Piacquad, Bradford J. Smith, Goodwin & Procter, Boston, MA, Richard D. Bisio, Honigman, Miller, Schwartz & Cohn, Detroit, MI, for Defendant–Appellee.

Before SUHRHEINRICH and CLAY, Circuit Judges; and GWIN, District Judge.*

CLAY, Circuit Judge.

Plaintiff, Dale De Pas, appeals an order by the district court granting Defendant, Stocker & Yale, Inc.'s, motion for summary judgment in connection with Plaintiff's age discrimination claim under the Michigan Elliot–Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2102, et seq. For the reasons stated below, this

* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

Court **AFFIRMS** the district court's decision.

## I.

### FACTS

Plaintiff, Dale De Pass, filed an age discrimination claim under ELCRA, on January 31, 2001, in Macomb County Circuit Court against Defendant, Stocker Yale, Inc. Defendant filed a Notice of Removal with the United States District Court for the Eastern District of Michigan on March 23, 2001, on the basis of diversity jurisdiction. The district court accepted jurisdiction by an order entered on April 13, 2001. Defendant moved for summary judgment on April 25, 2002, to which Plaintiff responded in opposition. The court granted Defendant's motion for summary judgment on October 18, 2002. Plaintiff filed a timely appeal on November 13, 2002.

Plaintiff, born on May 24, 1941, was employed by Die–Draulic, a manufacturer of custom made hydraulic pressure control systems tailored to fit specific machinery, from 1964 until Defendant purchased the company in 1975. Plaintiff then became an employee of Defendant. Defendant combined the Die–Draulic manufacturing with the manufacture of its own Stilson manufacturing line. The Stilson line, however, included fewer customized parts and was available to a wider variety of customers able to purchase Stilson parts from companies carrying the line in their inventories.

Initially, Plaintiff was in a sales position; however, in 1982 when the Stilson Chief Engineer retired, Plaintiff assumed chief engineering responsibilities for both the Stilson and the Die–Draulic lines. When the Stilson Sales manager was dismissed in 1992, Plaintiff assumed those responsibilities, as well. Defendant later hired Jeff Grivas as its Director of Sales/Marketing in August of 1997, subsequently causing Plaintiff to spend a majority of his time on the Die–Draulic line.

Defendant's sales from the Die–Draulic line decreased from 1996–98. The Die–Draulic product line made up 14.7 percent of the company's overall sales, but operated at a net loss. Half of the new sales from the Die–Draulic line came from its repair and replacement business. Consequently, in January 1999, Stilson's General Manager, Aaron Baker, proposed to reorganize the company to increase profitability. The proposal included a recommendation to divest Stocker Yale of the Die–Draulic product line, which was approved by Defendant's Chief Executive Officer, Mark Blodgett, in February 1999. Pending the sale of the Die–Draulic line, Defendant ceased to market and design any new Die–Draulic products but continued to perform maintenance on the existing product units in the market.

As a result of the reorganization, Plaintiff, along with two other employees, was laid off on May 10, 1999. Of the terminated employees, one was an engineer who worked primarily with Die–Draulic, and the other was Baker, whose general management position was eliminated pending the sale of Die–Draulic. Division Manager, Thomas Graskewicz, later assumed Baker's on-site supervisory responsibilities.

Plaintiff recalls that the CEO, Mark Blodgett, stated in several management meetings that the company needed "young blood" in the Stilson Division. Plaintiff cannot recall when the meeting occurred, but claims it was sometime in 1991. Plaintiff also claims that the alleged ageist comment occurred on more than one occasion; however, Defendant disputes all of the alleged comments.

Subsequent to Plaintiff's termination, Defendant hired Eric Smith, born on April 6, 1966, as its new Purchasing Manager/Engineer in October 1999, and hired Rick Gerschick, age 27 at the time, as the Production Planning Manager in January 2000. Defendant was unable, however, to sell Die–Draulic. The company still does repairs and maintenance work on the existing designs but has not designed or marketed units since Plaintiff was laid off.

After Plaintiff's termination, he became an independent consultant, selling and designing hydraulic pressure control systems. Plaintiff later became employed by Di–Dro, a competitor of Stilson and Die–Draulic.

## II.

### Standard of Review

A district court's grant of summary judgment is subject to *de novo* review by this Court. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir.2002). Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The non-moving party, however, "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Celotex*, 477 U.S. at 324, 106 S.Ct. 2548, 91 L.Ed.2d 265; *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994). Furthermore, the mere existence of a scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 251; *see also Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995).

## III.

### Analysis

■ ELCRA provides in pertinent part that it shall be unlawful for an employer to discriminate against an employee "because of religion, race, color, national origin, age, sex, height, weight, familial status, or marital status...." *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir.1999) (citing the Mich. Comp. Laws Ann. § 37.2102(1) (West Supp.1999)). Under Michigan law, a plaintiff may set forth a *prima facie* case of employment discrimination by presenting direct evidence of the defendant's discriminatory intent in facilitating the adverse employment action. *Hopson*, 306 F.3d at 433. In the absence of direct evidence of discrimination, a plaintiff may set forth his *prima facie* case through circumstantial evidence which gives rise to an inference of discrimination. *Id.*

The analytical framework of the burden shifting analysis in federal discrimination claims is equally applicable to state claims arising under Michigan Law. *Harrison v. Olde Financial Corp.*, 225 Mich.App. 601, 572 N.W.2d 679, 681 (1997). A plaintiff

who brings a claim of age discrimination under both federal and state law must prove that age was a determining factor in the adverse action the employer took against him or her. *Phelps v. Yale Security, Inc.,* 986 F.2d 1020, 1023 (6th Cir.1993). The plaintiff must set forth evidence that age was a factor in the employer's adverse action, and that but for this factor, the plaintiff would not have been discharged. *Id.*

Plaintiff's age discrimination complaint against Defendant is based on Plaintiff's termination from the company when Die–Draulic manufacturing employees were downsized pending its sale by Defendant. Plaintiff alleges that Defendant hired younger sales and engineering managers after his unlawful termination, in violation of the ELCRA; and that younger employees were hired as a result of company management's desire for "young blood" within the company, as allegedly stated at managerial meetings.

Plaintiff claims the district court erred in granting Defendant summary judgment because Plaintiff allegedly set forth both direct and circumstantial evidence of discrimination, which should have defeated Defendant's motion for summary judgment. As detailed below, this Court finds Plaintiff demonstrated neither direct, nor circumstantial evidence of employment discrimination sufficient enough to survive Defendant's motion.

### A. Direct Evidence.

Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir.1999) (citations omitted). Plaintiff alleges that Defendant's CEO and Chairman of Stilson, Mark Blodgett, stated in several

management meetings that the company needed some "young blood" in the Stilson Division; however, Plaintiff cannot recall when the meeting occurred, only that it was sometime in 1991. Plaintiff also claims the alleged ageist comment occurred on more than one occasion; however, he offers no evidence as to when, where, or how many times. Additionally, Plaintiff claims that because of the corporate focus on placing "young blood" within the Stilson division, Plaintiff was relieved of his responsibilities for the Stilson line and directed to focus primarily on the Die–Draulic Line, which was subsequently shut down.

In *Wexler v. White's Fine Furniture,* this Court reviewed the necessary elements of an age discrimination suit fit to survive summary judgment based on direct evidence. 317 F.3d 564, 574 (6th Cir. 2003). This Court reiterated the burdens of proof required if the plaintiff based his allegations on direct evidence of age discrimination, such as alleged ageist remarks. *Id.* If there was substantial evidence set forth that, if believed, would require the conclusion that unlawful discrimination was at least a motivating factor in Defendant's behavior, this Court would then need to engage in a mixed-motive analysis. *Id.* at 571 (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 247, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). Under this mixed-motive analysis, the burden then shifts to the defendant to prove by a preponderance of the evidence that it would have taken the same adverse action even if impermissible factors had not entered into its decision. *Id.*

Contrary to the sufficient evidence in *Wexler,* Plaintiff here has set forth no evidence beyond the allegations of his pleadings to support the claim of employment discrimination by Defendant's use of an alleged ageist remark. In *Wexler,*

there were several instances where discriminatory remarks were targeted toward the plaintiff. *Id.* at 570–71. The plaintiff himself documented many of these instances, and such comments were directed at the plaintiff at the very time he suffered an adverse employment action. That is not the case in the instant action. Plaintiff alleges that the CEO suggested that the Stilson division needed "young blood" at a meeting, but cannot recall to whom the comment was directed, why he made the reference, when such reference was made, or how frequently it was made. Furthermore, in a mixed-motive case, this Court would determine whether the defendant's statements reveal an adherence to a stigmatizing belief about older employees that was a motivating factor in the decision of the employer to engage in the adverse action. *Wexler*, 317 F.3d at 572. Nevertheless, Plaintiff falls short of fulfilling the required prong setting forth direct evidence, therefore leaving no need to engage in a mixed-motive analysis.

### B. Circumstantial Evidence

■ If a plaintiff lacks direct evidence of discrimination in a discharge case, a plaintiff may establish a *prima facie* case of age discrimination by showing: (1) he was a member of the protected class;[2] (2) he was discharged; (3) he was qualified for the position; and (4) he was replaced by a younger person. *Phelps*, 986 F.2d at 1023. In cases arising out of workforce reduction, the "fourth requirement is modified so that the plaintiff must also demonstrate some 'direct, circumstantial or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Id.*

If plaintiff is able to establish a *prima facie* case, the defendant then presents evidence of its legitimate, non-discriminatory reason for terminating the plaintiff's employment. *Krohn v. Sedgwick James of Michigan, Inc.*, 244 Mich.App. 289, 624 N.W.2d 212, 216 (2001). Thereafter, the plaintiff bears the burden of proving that the employer's articulated reason was not the true reason, but rather a mere pretext for discrimination. *Id.*

In the instant action, Plaintiff fulfills the first three prongs of his *prima facie* case; however, Plaintiff sets forth no direct, circumstantial or statistical evidence that Defendant singled out Plaintiff for discharge and replaced him with a younger person for impermissible reasons. *Phelps*, 986 F.2d at 1023. The two new employees to join Stilson, subsequent to Plaintiff's termination, were hired five and eight months after Plaintiff was fired, respectively. Neither of the men, who were both younger than Plaintiff, were hired to fulfill the duties of Die–Draulic's sales and engineering managers; but rather they both worked on the Stilson line. Given Plaintiff's failure to set forth a *prima facie* case, there is no reason to dispute the district court's order granting Defendant's motion for summary judgment.

■ Conversely, if the Court should find that Plaintiff has fulfilled his *prima facie* case, Defendant has set forth legitimate, non-discriminatory reasons for terminating Plaintiff which Plaintiff has not established were pretextual. *Krohn*, 624 N.W.2d at 216. Defendant has maintained that Plaintiff's termination was part of Defendant's much needed reorganization, which included divesting in Die–Draulic. In attempting to counter Defendant's explanation, Plaintiff has unpersuasively alleged that he was relieved of his duties for

**2.** For purposes of age discrimination claims under federal law, the protected class consists of all individuals of at least forty years of age. 29 U.S.C. § 631.

Stilson and purposely made to work with the soon-to-be defunct Die–Draulic when Defendant hired Jeff Grivas to be Stilson's new Sales Manager; however, these accusations are well countered by record evidence.[3] Defendant was well within its right to split the sales duties of Die–Draulic and Stilson between Plaintiff and Grivas, as a reasonable business decision. *Wexler*, 317 F.3d at 576 (stating this Court has held that the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir.1998))). The reasonableness of Defendant's business decision is substantiated by the evidence indicating that sales of the Die–Draulic line had decreased during the relevant time frame and the Die–Draulic line operated at a net loss.

Because Plaintiff has set forth no direct or circumstantial evidence to support his allegation of age discrimination during his employment with Defendant, we **AFFIRM** the district court's ruling granting Defendant's motion for summary judgment.

---

**3.** Grivas had been employed since 1997 and Plaintiff was terminated in 1999, thus leaving no real causal connection between Grivas' hiring and Plaintiff's termination.

